**Joann C. ARNES, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 91–35752.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1992.

Decided Dec. 11, 1992.

Charles Bricken, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant-appellant.

Margo T. Keller and Paul A. Tonella, Lasher, Holzapfel, Sperry & Ebberson, Seattle, WA, for plaintiff-appellee.

Before: HUG, FLETCHER, and BRUNETTI, Circuit Judges.

HUG, Circuit Judge:

The issue in this case is whether a taxpayer must recognize for income tax purposes the gain that she realized when, pursuant to a divorce settlement, a corporation redeemed her half of the stock in the corporation, the remaining stock of which was owned by her former husband. The district court, ruling on cross-motions for summary judgment, held that Section 1041 of the Internal Revenue Code of 1986 (I.R.C.) relieved the taxpayer of having to recognize the gain, and awarded the taxpayer a refund of $53,053 for 1988.

The district court had jurisdiction over the taxpayer's claim pursuant to 28 U.S.C. § 1346(a)(1) (1988). We have jurisdiction over the Government's timely appeal pursuant to 28 U.S.C. § 1291 (1988). We affirm.

## I.

Joann Arnes, the Taxpayer–Appellee, married John Arnes in 1970. In 1980, they formed a corporation, "Moriah," to operate a McDonald's franchise in Ellensburg, Washington. That corporation issued 5,000 shares of stock in the joint names of John Arnes and Joann Arnes. In 1987, the couple agreed to divorce. McDonald's Corporation required 100% ownership of the equity and profits by the owner/operator, and informed John Arnes that there should be no joint ownership of the restaurant after the divorce.

Joann and John Arnes entered into an agreement to have their corporation redeem Joann Arnes' 50 percent interest in the outstanding stock for $450,000. The corporation would pay that money to Joann Arnes by forgiving a debt of approximately $110,000 that she owed the corporation, by making two payments of $25,000 to her during 1988, and by paying the remainder of approximately $290,000 to her in monthly installments over ten years beginning in February 1988. The agreement was incorporated into the decree of dissolution of the marriage, dated January 7, 1988. Joann Arnes surrendered her 2,500 shares to the corporation on December 31, 1987, and the corporation cancelled her stock certificate on May 4, 1988, then issuing another 2,500 shares to John Arnes.

On her federal income tax return for 1988, Joann Arnes reported that she sold her stock in Moriah on January 2, 1988, for a price of $450,000, and that her basis was $2,500, resulting in a profit of $447,500. She received $178,042 in 1988 as part of the sales price. Using an installment method, she treated $177,045 as long-term capital gain and the remainder as recovery of a portion of her basis.

On December 27, 1989, she filed a timely claim for refund of $53,053 for 1988 on the ground that she was not required to recognize any gain on the transfer of her stock because the transfer was made pursuant to a divorce instrument. The IRS did not allow the claim for refund, and Joann Arnes initiated this suit.

The district court found that the redemption of Joann Arnes' stock in Moriah was required by a divorce instrument, and that John Arnes had benefitted from the transaction because it was part of the marital property settlement, which limited future community property claims that Joann Arnes might have brought against him. The court, in applying the IRS regulations, found that, although Joann transferred her stock directly to Moriah, the transfer was made on behalf of John and should have been treated as having been made to John. Therefore, the transfer qualified for nonrecognition of gain pursuant to the I.R.C. exemption for transfers made to spouses or former spouses incident to a divorce settlement. *See* 26 U.S.C. § 1041 (1988). Summary judgment was granted in favor of Joann Arnes.

The Government appeals. Meanwhile, in order to insure that the capital gain will be taxed, the Government has asserted a protective income tax deficiency against John Arnes, who has contested the deficiency by filing a petition with the Tax Court. His case is pending but not before this court. The Government maintains that, although Joann Arnes is the appropriate party to be

taxed for the gain, John Arnes should be taxed if the district court's ruling is upheld. If neither John nor Joann is taxed, the $450,000 used to redeem Joann's appreciated stock apparently will be taken out of the corporation tax-free.

## II.

A grant of summary judgment is reviewed *de novo*. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir.1987).

## III.

The Government contends that the gain resulting from Moriah's redemption of Joann Arnes' stock does not qualify for exemption under section 1041, which is limited to transfers made directly to one's spouse or former spouse, or transfers made into trust for that person. Joann Arnes' transfer to Moriah, the Government contends, is outside the scope of the exemption.

Joann Arnes contends that her transfer of stock to Moriah should be considered a transfer to John, resulting in a benefit to John, and absolving her of the obligation to bear the burden of any resulting tax.

Section 1041 provides in part:

(a) General rule. No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)—

(1) a spouse, or

(2) a former spouse, but only if the transfer is incident to the divorce.

(b) Transfer treated as gift; transferee has transferor's basis. In the case of any transfer of property described in subsection (a)—

(1) for purposes of this subtitle, the property shall be treated as acquired by the transferee by gift, and

(2) the basis of the transferee in the property shall be the adjusted basis of the transferor.

26 U.S.C. § 1041 (1988) ("Transfers of property between spouses or incident to divorce").

■ The purpose of the provision is to defer the tax consequences of transfers between spouses or former spouses. *See* H.R.Rep. No. 432, Pt. II, 98th Cong., 2d Sess. 1491 (1984), *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 697, 1134 ("a husband and wife are a single economic unit"). Property received in such a transfer is excluded from the recipient's gross income. The recipient's basis is then equal to the transferor's basis. 26 U.S.C. § 1041(b)(2) (1988). Later, when the recipient transfers the property to a third party, the gain or loss must be recognized.

After section 1041 was enacted, the Treasury Department published a temporary regulation to implement the statute. Temp.Treas.Reg. § 1.1041–1T (1992). The regulation explains that in certain cases a transfer of property to a third party "on behalf of" a spouse or former spouse should be treated as a transfer to the spouse or former spouse. *Id.* at Q–9, A–9. One example supplied in the regulation is the case where the transfer to the third party is required by a divorce or separation instrument. Such a transfer of property

will be treated as made directly to the nontransferring spouse (or former spouse) and the nontransferring spouse will be treated as immediately transferring the property to the third party. The deemed transfer from the nontransferring spouse (or former spouse) to the third party is not a transaction that qualifies for nonrecognition of gain under section 1041.

Temp.Treas.Reg. § 1.1041–1T, A–9 (1992).

The example suggests that the tax consequences of any gain or loss arising from the transaction would fall upon the nontransferring spouse for whose benefit the transfer was made, rather than upon the transferring spouse. Consistent with the policy of the statute, which is to defer recognition until the property is conveyed to a party outside the marital unit, the regulation seems to provide for shifting the tax burden from one spouse to the other, where appropriate.

Thus, a transfer by a spouse to a third party can be treated as a transfer to the

other spouse when it is "on behalf of" the other spouse. Whether the redemption of Joann's stock can be construed as a transfer to John, pursuant to the regulation example in A–9, depends upon the meaning of "on behalf of." The district court interpreted the regulation as meaning that a transfer was made "on behalf of" John Arnes if he received a benefit from the transfer. The court then concluded that John did receive a benefit, because the transfer was part of the marital property agreement which settled any future community property claims that Joann Arnes could have asserted against John.

■ Although no case is directly on point, many tax cases concern transfers made on behalf of other persons. Generally, a transfer is considered to have been made "on behalf of" someone if it satisfied an obligation or a liability of that person. If an employer pays an employee's income tax, that payment is income to the employee. *See Old Colony Trust Co. v. Commissioner,* 279 U.S. 716, 729–31, 49 S.Ct. 499, 504, 73 L.Ed. 918 (1929). If a corporation assumes a shareholder's bank note in exchange for stock, the shareholder receives a taxable constructive dividend. *Schroeder v. Commissioner,* 831 F.2d 856, 859 (9th Cir.1987).

In *Schroeder,* the taxpayer borrowed money from a bank to buy stock in the corporation. The corporation later redeemed part of that stock, assumed the taxpayer's bank note, and forgave a debt owed by the taxpayer to the corporation. At the time that the taxpayer borrowed the money from the bank, he owned no part of the corporation and had no authority to act on behalf of the corporation. *See id.* at 859–60 & n. 7. The taxpayer had the primary obligation to repay the loan, and the corporation's assumption of the loan relieved the taxpayer of that obligation. We held that the redemption of Schroeder's stock was a taxable constructive dividend. *Id.* at 859.

The Government argues that the Arnes stock transfer is more properly analogized to *Holsey v. Commissioner,* 258 F.2d 865 (3rd Cir.1958), where the Third Circuit held that a shareholder who owned fifty percent of the stock in a corporation did not receive a taxable benefit when the corporation redeemed the other fifty percent of the stock. The court found that the redemption "did not discharge any obligation of [the taxpayer] and did not benefit him in any direct sense," although the result was that the shareholder gained control of the company. *Id.* at 868.

■ John Arnes had an obligation to Joann Arnes that was relieved by Moriah's payment to Joann. That obligation was based in their divorce property settlement, which called for the redemption of Joann's stock. Although John and Joann were the sole stockholders in Moriah, the obligation to purchase Joann's stock was John's, not Moriah's. Furthermore, John personally guaranteed Moriah's note to Joann. Under Washington law, Joann could sue John for payment without suing Moriah. *See* Wash. Rev.Code Ann. § 62A.3–416(1) (West 1979). Thus, John was liable, with Moriah, for the payments due Joann.

We hold that Joann's transfer to Moriah did relieve John of an obligation, and therefore constituted a benefit to John. Joann's transfer of stock should be treated as a constructive transfer to John, who then transferred the stock to Moriah. The $450,000 was paid to Joann by Moriah on behalf of John. The transfer of $450,000 from the corporate treasury need not escape taxation, if we hold, as we do, that Joann is not required to recognize any gain on the transfer of her stock, because it is subject to section 1041. The tax result for Joann is the same as if she had conveyed the property directly to John.

The Government argues that because Joann transferred her stock to the corporation, rather than to John, the exception in section 1041 should not apply. The corporation cancelled Joann's stock and agreed to pay Joann $450,000. As a result, no asset with a carryover basis exists. John received an additional 2,500 shares from the corporation after Joann's shares were cancelled, but he did not carry over Joann's basis, because the transfer was not made directly to him. Under this literal applica-

tion of the statute, Joann's gain, from the appreciation of the stock, would not be recognized by John if he were to dispose of his stock. Although John became the sole owner of the corporation as a result of the transfer, the net worth of the corporation was depleted, because the corporation incurred the debt of $450,000 to Joann. As the Government puts it, before the stock redemption, John owned half of a corporation worth $900,000; after the redemption, he owned all of a corporation worth $450,-000. John has realized no gain; the value of his stock is still in the corporation, and the redemption did not increase the value of John's stock. In contrast, Joann received cash (and debt forgiveness) for her transfer of stock.

We reject the Government's application of the statute. The regulations, particularly as explained by Question and Answer 9, in Temp.Treas.Reg. § 1.1041–1T, demonstrate that the statute is meant to apply to situations such as this one, where a transfer is made on behalf of one's former spouse.

Finally, the Government points to one other example in the Temporary Treasury Regulations interpreting section 1041. Question 2 describes a situation in which a corporation wholly owned by one spouse sells property to the other spouse. That sale is not subject to the exemption rule of section 1041. *See* Temp.Treas.Reg. § 1.1041–1T(a), Q–2, A–2, ex. 3 (1992). The example does not apply to the Arnes transaction because *Moriah* was owned one-half each by John and Joann.

The judgment of the district court is AFFIRMED.