T.C. Memo. 1997-79


UNITED STATES TAX COURT


DENNIS A. AND TAI K. PRAEGITZER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

KATHLEEN M. DAWES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 719-95, 1344-95.      Filed February 13, 1997.


Paul D. Sheldon, for petitioners in docket No. 719-95.

James G. Roberts, for petitioner in docket No. 1344-95.

Robert E. Cudlip, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes for the taxable year 1990:

| Petitioner | Deficiency | Additions to Tax Sec. 6662(a) |
|---|---|---|
| Dennis A. & Tai K. Praegitzer[1] | $33,425 | $6,685 |
| Kathleen M. Dawes | 37,293 | 7,458 |

All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner Praegitzer and petitioner Dawes are former spouses. Prior to and during their marriage, Mr. Praegitzer and Ms. Dawes, along with Ms. Dawes' brother, owned a corporation (Ameritech). Incident to Mr. Praegitzer's and Ms. Dawes' divorce, Ameritech spun off one of its businesses (the 303 products business) to petitioner Praegitzer. This business became petitioner Praegitzer's wholly owned corporation (303 Products, Inc., hereinafter 303 Products). Respondent contends that petitioner Praegitzer received dividend income from 303 Products when it distributed cash to, and forgave a debt owed it by, petitioner Praegitzer.[2] Petitioner Praegitzer argues that the cash and relief from indebtedness were received incident to a divorce and thus were tax free under section 1041. Respondent alternatively argues that if petitioner Praegitzer is not taxable

---

[1] Tai K. Praegitzer is a party to this action solely because she filed a joint Federal income tax return with Dennis A. Praegitzer for the taxable year 1990. Any reference to petitioner Praegitzer herein is to Dennis A. Praegitzer.

[2] Respondent further contends that this adjustment to adjusted gross income reduces the amount of medical deductions that Praegitzer was entitled to claim. This is a computational matter that will be addressed, if necessary, under Rule 155.

on the transaction, petitioner Dawes received a constructive dividend from Ameritech when it distributed assets to Mr. Praegitzer. After concessions,[3] the issues for decision are whether petitioner Praegitzer has unreported dividend income[4] and, alternatively, whether petitioner Dawes has unreported income from a constructive dividend.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. Petitioners Praegitzer resided in Palo Cedro, California, and petitioner Dawes resided in Shasta County, California, at the time they filed their respective petitions.

In 1976, Kerry Dawes, the brother of petitioner Dawes, and petitioner Praegitzer began an aircraft propeller repair and maintenance business (propeller business) as a partnership in Redding, California. Kathleen Dawes began working in the propeller business within 1 year of its inception.

---

[3] Respondent conceded that neither petitioner is liable for the accuracy-related penalty pursuant to sec. 6662(a). Respondent asserts the deficiencies against petitioners in the alternative. If we sustain respondent's determination as to petitioners Praegitzer, the issue as to petitioner Dawes would be moot.

[4] There is no suggestion by any of the parties that petitioner Praegitzer did not have a dividend because 303 Products' earnings and profits were inadequate.

Kerry Dawes and petitioner Praegitzer subsequently formed Ameritech Industries, Inc. (Ameritech), a California corporation, on October 1, 1982, under its original name of American Propeller Service, Inc. Kerry Dawes and petitioner Praegitzer each initially contributed $5,000 to Ameritech, and each received 5,000 shares of Ameritech common stock. Petitioner Praegitzer was president and treasurer of Ameritech, Kerry Dawes was vice president and secretary, and petitioner Dawes was controller from 1982 until October 3, 1989.

Kerry Dawes and petitioner Praegitzer transferred the propeller business to Ameritech in 1982. Concurrently, Ameritech developed and began marketing and selling a line of chemicals for the protective coating of equipment, including a product known as 303 (the 303 products business).

Petitioner Praegitzer and petitioner Dawes were married in 1984, and they permanently separated on or about July 6, 1987. Following the separation, petitioner Praegitzer, petitioner Dawes, and Kerry Dawes could no longer agree on how to operate Ameritech.

On July 29, 1987, petitioner Praegitzer filed an action for the dissolution of his marriage to petitioner Dawes. Petitioner Dawes filed a cross-complaint in the action. In the action, petitioner Dawes contended that, by virtue of an implied agreement between the parties, she owned one-half of the 5,000 shares of Ameritech held in petitioner Praegitzer's name. The

trial of the marital dissolution action took place October 11-13, 1988.  A judgment of dissolution (the judgment) was entered on June 9, 1989.  The judgment ordered the division of certain community property and other jointly owned property, but did not include the Ameritech stock.  The judgment provided, inter alia, that in order to equalize the division of community liabilities and property set forth in the judgment, petitioner Praegitzer was to pay petitioner Dawes the sum of $30,683 either in the form of a 3-year promissory note in the amount of $36,097.65 or by transferring 403 shares of Ameritech stock to petitioner Dawes at a stipulated value of $76 per share.  The judgment made no other mention of the Ameritech stock.  The judgment did not purport to resolve any other community property issues with regard to stock held in Ameritech.

Also on June 9, 1989, a judgment was entered on petitioner Dawes' first amended cross-complaint, ordering that petitioner Praegitzer and petitioner Dawes were each owners of 2,500 shares of the 5,000 shares of Ameritech stock issued in the name of petitioner Praegitzer and further ordering petitioner Praegitzer to transfer 2,500 of his shares to petitioner Dawes.  Petitioner Praegitzer appealed this judgment.

An Ameritech shareholders' meeting was held on October 3, 1989.  Kerry Dawes, petitioner Praegitzer, and petitioner Dawes were present at the meeting.  Also present at the meeting were Lee Lopez, counsel for petitioner Dawes, Steven Small, counsel

for petitioner Praegitzer, and Richard Bates, counsel for Ameritech. At the meeting, petitioner Praegitzer, as corporate president, refused to sign newly issued stock certificates to divide the stock between himself and petitioner Dawes.

At the October 3, 1989, meeting, based on an opinion by Mr. Bates, petitioner Dawes was allowed to vote 2,500 shares of the 5,000 shares held in petitioner Praegitzer's name. By a vote of 7,500 in favor to 2,500 opposed, the shareholders amended the corporate by-laws to provide for three directors. Immediately following the amendment, petitioner Dawes was elected to the board of directors by a vote of 7,500 shares in favor and 2,500 shares opposed.

An Ameritech directors' meeting was also held on October 3, 1989. Kerry Dawes, petitioner Praegitzer, and petitioner Dawes were present as directors. Also present were Mr. Lopez, Mr. Small, and Mr. Bates. By a vote of 2 to 1, Kerry Dawes was elected president and treasurer, and petitioner Dawes was elected vice president and secretary.

In November 1989, settlement negotiations occurred between counsel for petitioner Praegitzer and counsel for petitioner Dawes. Under the circumstances, a 25-percent minority interest was of diminished value to petitioner Praegitzer as it offered no control of Ameritech; the negotiations therefore were designed to restructure the judgment so that either petitioner Praegitzer or

petitioner Dawes and Kerry Dawes would obtain 100-percent ownership of Ameritech.

George Murphy represented petitioner Praegitzer during his divorce.  Mr. Murphy's associate, Debora Dragland, represented petitioner Praegitzer during the negotiations with petitioner Dawes' counsel, Mr. Lopez.  In a November 14, 1989, letter from Ms. Dragland to Mr. Lopez, petitioner Praegitzer offered petitioner Dawes $160,000 to settle his appeal of the divorce court's award to petitioner Dawes of 2,500 shares in Ameritech, contingent on his first obtaining Kerry Dawes' 5,000 shares.  In a November 22, 1989, letter from Mr. Lopez' law firm to Ms. Dragland, petitioner Dawes rejected petitioner Praegitzer's offer and counter offered $160,000 for his 2,500 shares.

On December 1, 1989, petitioner Praegitzer filed an injunction (the injunction action) against Ameritech, Kerry Dawes, and petitioner Dawes to prevent petitioner Dawes from exercising her rights to the 2,500 shares of stock and also to prevent Ameritech from transferring the 2,500 shares to petitioner Dawes.

On December 12, 1989, a judicially supervised settlement conference on petitioner Praegitzer's appeal of the judgment was held before retired associate Justice Bertram D. Janes of the California Court of Appeal for the Third Appellate District.  At the December 12, 1989, settlement conference, both parties were represented by counsel.  Mr. Lopez represented petitioner Dawes,

and Mr. Murphy and Ms. Dragland represented petitioner Praegitzer. After discussions between Mr. Lopez, Mr. Murphy, and Justice Janes, a memorandum of agreement (the 12/12 agreement) was typed at the urging of Justice Janes and was signed by Mr. Lopez and Mr. Murphy. The 12/12 agreement was not signed by petitioner Dawes or by petitioner Praegitzer. Justice Janes signed the 12/12 agreement approving it "as a judicial settlement." Justice Janes stated to the attorneys that if they encountered any problems, they were to come back to see him to resolve the matter.

The memorandum of agreement, dated December 12, 1989, provided as follows:

> This appeal is settled this date upon the following conditions:
>
> 1. The Respondent [petitioner Dawes] will pay in cash $103,000 to Appellant [petitioner Praegitzer].
>
> 2. The Corporation will transfer rights to products known as "303" and "306" including inventory and equipment, the equipment determined as a forklift and a binding machine, to the extent inventory is less than $59,000, it will be made up by Respondent.
>
> 3. No royalties on products sold by Appellant after this date (ok Lopez; ? George).
>
> 4. A three and a half year covenant not to compete in the propellor shop business in Washington, Oregon, California and Nevada.
>
> 5. Kathy Dawes to forgive judgments and cancelled notes in the amount of $36,097.65 (method of forgiveness to be determined jointly by counsels' tax counsel.)
>
> 6. Corporation to forgive debt owed by Appellant in the amount of $21,000.

7.  Corporation will assume, by novation if possible, SBA loan in the amount of $58,000 (if novation not possible, Kathy and Kerry Dawes will hold Appellant harmless by appropriate agreement.)

8.  Appellant will transfer all shares of stock in the corporation to the corporation or Kerry Dawes.

9.  The formal agreement to be structured to result in the least amount of tax liability legally possible for the Appellant; to the extent that the settlement agreement reached does result in tax liability to the Appellant, the agreement will be structured, if possible, to the Respondent's tax benefit.  For example, in the event the sums being paid would result in Appellant paying taxes on $60,000, then the Respondent would have the right to place in the agreement a covenant not to compete to that extent.

10.  Appellant agrees to dismiss the Shasta County action in which an OSC is pending, and this appeal, when a final settlement agreement is executed; each side to pay its own costs and the remittitur to go down forthwith.

11.  Corporation or Dawes to retain all rights pursuant to two assigned agreements dated November 12, 1980.

Subsequent to December 12, 1989, there were additional negotiations concerning the terms and structure that the eventual settlement agreement would take.  Subsequent to the December 12, 1989, settlement conference, Mr. Lopez, as counsel for petitioner Dawes, and Mr. Murphy, as counsel for petitioner Praegitzer, engaged separate tax counsel for advice on how to structure an agreement pursuant to the 12/12 agreement.  Mr. Lopez consulted Howard Schweitzer, and Mr. Murphy consulted Kevin Schoneman.

Mr. Schoneman proposed a structure involving payment of $103,000 by petitioner Dawes and transfer of Ameritech assets from Ameritech to petitioner Praegitzer, as outlined in a

December 26, 1989, letter from Mr. Schoneman to Mr. Lopez. In early January 1990, Mr. Schweitzer informed Mr. Schoneman that he did not think petitioner Dawes had $103,000. They discussed how to get around that problem. Mr. Schweitzer suggested that Ameritech could pay the money. The idea of a tax-free reorganization came up during their conversation.

Mr. Schweitzer and Mr. Schoneman agreed upon a tax-free reorganization to distribute the 303 products business assets to a new corporation to be owned by petitioner Praegitzer. On January 10, 1990, Mr. Schoneman sent Mr. Schweitzer a letter stating that a tax-free reorganization, whereby petitioner Dawes and Kerry Dawes would operate the propeller business and petitioner Praegitzer the 303 products business, was acceptable to petitioner Praegitzer.

Ultimately, the parties signed two agreements on January 30, 1990: (1) The Marital Settlement Agreement (MSA), executed by petitioner Dawes and petitioner Praegitzer, and (2) the Agreement and Plan of Corporate Separation and Reorganization (the reorganization agreement). The MSA provided that "This Agreement controls over the Judgments dated June 9, 1989 and the Memorandum of Agreement dated December 11, 1989."[5] Under the MSA, petitioner Dawes and petitioner Praegitzer divided all of their community property and jointly owned property and liabilities,

---

[5] The parties stipulated that the reference to Dec. 11, 1989, was a typographical error that was intended to refer to the Dec. 12, 1989, agreement.

with the exception of clothing, jewelry, furniture, and furnishings previously divided. Of the 5,000 shares of Ameritech stock held in petitioner Praegitzer's name, one-half were allocated to petitioner Dawes as her separate property, and one-half were allocated to petitioner Praegitzer as his separate property. In the MSA, the parties expressed their intention that the MSA "be subject to the rules of IRC Section 1041, where applicable." The MSA further provided that "The Parties have made the transfers set forth in this paragraph with the intent that such transfers constitute equitable division of their community and jointly-owned property." In the MSA, the parties intended that the agreement be a final and complete settlement of all rights and obligations between them, including property rights and property claims and the right of either petitioner Dawes or petitioner Praegitzer to spousal support.

The reorganization agreement was executed by Ameritech, petitioner Praegitzer, petitioner Dawes, and Kerry Dawes. The reorganization agreement provided that the 303 products business would be placed in a new corporation to be owned solely by petitioner Praegitzer and that the propeller business would remain in Ameritech which would be owned solely by petitioner Dawes and Kerry Dawes. The reorganization agreement provided that Ameritech would cause the formation of a new subsidiary known as 303 Products, Inc. (303 Products), with an initial stock issue of 1,000 shares of common stock, to which Ameritech would

transfer all of the assets of its 303 products business, in exchange for the 1,000 shares of 303 Products. The assets included, in part, $103,000 in cash and an obligation of petitioner Praegitzer to Ameritech in the approximate amount of $21,000 (the Praegitzer debt). The reorganization agreement provided that petitioner Praegitzer would transfer his 2,500 shares of Ameritech to Ameritech in exchange for the transfer by Ameritech to petitioner Praegitzer of 1,000 shares of 303 Products.

The parties intended that the transactions under the reorganization agreement would qualify as a tax-free reorganization. In the reorganization agreement, petitioner Praegitzer agreed to dismiss his appeal of the dissolution action and also to dismiss the injunction action.

Petitioner Praegitzer and petitioner Dawes agreed that the reorganization agreement depended, for its legal effect, upon the execution by petitioner Praegitzer and petitioner Dawes of the MSA entered into contemporaneously. The reorganization agreement contained an integration clause. Petitioner Praegitzer and petitioner Dawes agreed that the reorganization agreement was the entire agreement between them pertaining to the subject matter thereof and that it superseded all prior and contemporaneous agreements, except those contemplated thereunder or not inconsistent therewith.

A meeting of the board of directors of Ameritech was held on January 25, 1990. On January 30, 1990, Ameritech borrowed

$103,000 from an unrelated party; petitioner Dawes and Kerry Dawes guaranteed Ameritech's promissory note. A meeting of the board of directors of Ameritech was held on January 30, 1990. Also present at the meeting were Mr. Lopez and Mr. Small. The board of directors unanimously approved the reorganization agreement and related documents. Kerry Dawes, corporate president, announced that a new corporation, 303 Products, had been formed on January 16, 1990. Kerry Dawes also announced that certain assets should be transferred to the new corporation to capitalize it. The directors voted unanimously to transfer the assets to 303 Products in consideration for 303 Products' issuing 1,000 shares of stock to Ameritech. The assets included $103,000 and the Praegitzer debt of $21,254. All of the directors, including petitioner Praegitzer, voted that it was in the best interests of Ameritech to acquire or redeem petitioner Praegitzer's 2,500 shares of Ameritech in exchange for the 1,000 shares of 303 Products owned by Ameritech. Further, it was resolved unanimously that the president and secretary of Ameritech were authorized to consummate the transaction as set forth in the reorganization agreement. The board of directors unanimously approved the reorganization and acquisition of petitioner Praegitzer's 2,500 shares.

A closing under the reorganization agreement was held on January 30, 1990. Ameritech conveyed the assets of the 303 products business to 303 Products by an assignment of assets dated January 30, 1990, executed by Kerry Dawes as president of

Ameritech and by delivery of Ameritech's check in the amount of $103,000 payable to 303 Products to petitioner Praegitzer. The assets transferred from Ameritech to 303 Products also included $59,000 worth of inventory and equipment. The total value of the assets transferred was approximately $183,000.

Petitioner Praegitzer transferred his remaining 2,500 shares of Ameritech to Ameritech, and Ameritech assigned its 1,000 shares of 303 Products to petitioner Praegitzer on January 30, 1990. Petitioner Praegitzer resigned as an officer and director of Ameritech on January 30, 1990. On that same day, petitioner Praegitzer, Kerry Dawes, and Ameritech executed a mutual release.

Petitioner Praegitzer was concerned when he received the $103,000 check payable to 303 Products. His accountant, Dave Scott, told petitioner Praegitzer that since he was the sole owner of 303 Products it would be alright for him to go ahead and cash the check. On February 2, 1990, petitioner Praegitzer went to the bank with the $103,000 check, converted it into a cashier's check payable to 303 Products, and then deposited the cashier's check into the corporate checking account of 303 Products. Also on February 2, 1990, petitioner Praegitzer caused 303 Products to issue him a check for $103,000 which he deposited into his personal checking account.

The $103,000 was recorded on the accounting books of 303 Products as received by the corporation. At the time that petitioner Dawes signed the MSA and the reorganization agreement,

she did not know that petitioner Praegitzer would withdraw the $103,000 from 303 Products.

The Praegitzer debt was recorded in the accounting books and records of 303 Products as received on or about January 30, 1990. On the 303 Products financial statements for the year ended June 30, 1991, the Praegitzer debt was removed from the balance sheet of 303 Products by the corporation's C.P.A. on the ground that the Praegitzer debt should have been taken off the books of Ameritech as of December 12, 1989. At no time on or after January 30, 1990, did 303 Products exercise any rights to collect on any debt owed to it by petitioner Praegitzer.

OPINION

Although respondent's role in these two cases is that of a stakeholder, she nonetheless concedes that the steps of the reorganization, up to and including the exchange of stock, were tax free under sections 355 and 368(a)(1)(D) and argues that petitioner Praegitzer received a dividend from 303 Products when it distributed cash to, and canceled indebtedness[6] owed to it by, Mr. Praegitzer. Petitioner Praegitzer argues that the cash and cancellation of indebtedness were received incident to his divorce from petitioner Dawes, and thus, are tax free pursuant to section 1041. Section 1041(a) provides:

---

[6] Cancellation of a shareholder's indebtedness owed to his corporation generally is treated as a distribution of property within the meaning of sec. 301. Sec. 1.301-1(m), Income Tax Regs.

(a) GENERAL RULE.--No gain or loss shall be recognized on a transfer of property from an individual to * * *

(1) a spouse, or

(2) a former spouse, but only if the transfer is incident to a divorce.

Although his transfer of stock was to a third party, Ameritech, petitioner Praegitzer contends that it still qualifies as a transfer under section 1041 pursuant to section 1.1041-1T(c), Q&A 9, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984) (Q&A 9).  Q&A 9 provides:

Q-9.  May transfers of property to third parties on behalf of a spouse (or former spouse) qualify under section 1041?

A-9.  Yes.  There are three situations in which a transfer of property to a third party on behalf of a spouse (or former spouse) will qualify under section 1041, provided all other requirements of the section are satisfied.  * * *  In the three situations, * * * the transfer of property will be treated as made directly to the nontransferring spouse (or former spouse) and the nontransferring spouse will be treated as immediately transferring the property to the third party.  The deemed transfer from the nontransferring spouse (or former spouse) to the third party is not a transaction that qualifies for nonrecognition of gain under section 1041.

Id.

In support of his argument, petitioner Praegitzer relies on Arnes v. United States, 981 F.2d 456 (9th Cir. 1992).  In Arnes, Joann and John Arnes formed a corporation, "Moriah", to operate a McDonald's franchise.  Joann and John were joint owners of 100 percent of Moriah.  When the couple divorced, they were required

by the McDonald's franchise agreement to terminate their joint ownership of Moriah.

Joann and John Arnes entered into an agreement to have Moriah redeem Joann's 50-percent interest for $450,000. Joann reported the gain from the redemption on her Federal income tax return. Subsequently, Joann filed a claim for refund, contending that the transfer of her stock to Moriah was made pursuant to a divorce instrument, and therefore she was not required to recognize any gain on the transfer of her stock in accordance with section 1041. The Internal Revenue Service (IRS) disallowed the claim for refund, and Joann filed suit in District Court.

The District Court concluded that the redemption was required by a divorce instrument, and that John had benefited from the transaction because it was part of the marital property settlement, which limited future community property claims by Joann. The court, applying Q&A 9, determined that, although Joann transferred her stock directly to Moriah, the transfer was made on behalf of John and should be treated as having been made to John. Accordingly, the transfer qualified for nonrecognition of gain pursuant to section 1041 and summary judgment was granted in favor of Joann. Id.

The Court of Appeals for the Ninth Circuit affirmed the judgment of the District Court. The Court of Appeals observed that the transfer would be tax free to Joann pursuant to section 1041 if the transfer were "on behalf of" John as required by Q&A 9. The court reasoned that a transfer is "on behalf of" another

if it satisfies an obligation or liability of that person. Applying Washington State law, the Court of Appeals concluded that the obligation to purchase Joann's stock was John's and not Moriah's. Thus, the court held that "Joann's transfer to Moriah did relieve John of an obligation, and therefore constituted a benefit to John." Id. at 459.

Even if we assume, arguendo, that the stock for stock exchange was "on behalf of" petitioner Dawes, petitioner Praegitzer is not necessarily insulated from tax. Respondent is not seeking to tax petitioner Praegitzer on that exchange itself, which is tax free to him under section 355 regardless of the application of section 1041. Rather, respondent is seeking to include in his income, as dividends received by petitioner Praegitzer from 303 Products, $103,000 of cash and $21,000 in forgiveness of indebtedness, a total of $124,000.

The MSA and the reorganization agreement resolved any marital claims between petitioner Praegitzer and petitioner Dawes. The agreements provided for the resolution of petitioner Dawes' marital claims to petitioner Praegitzer's stock in Ameritech, and for the concurrent severance of petitioner Praegitzer's interest in that corporation, through a divisive reorganization, culminating in the stock for stock exchange that left petitioner Praegitzer with no ownership of Ameritech and as sole owner of 303 Products. When 303 Products distributed $103,000 of cash to petitioner Praegitzer and forgave his $21,000 debt, it was done at his own behest, as sole shareholder of that

corporation.  The agreements did not obligate him to do it, and moreover it was probably a matter of indifference to petitioner Dawes, and to Ameritech, whether he did it, his stock in Ameritech having been relinquished in the previous exchange.

Absent sham or agency principles, the corporations involved are considered separate taxable entities.  Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943).  There is no indication that this was a sham or that either corporation was petitioner Dawes' agent.  Therefore, once the reorganization, which was incident to the divorce, was completed, any further transactions between petitioner Praegitzer and 303 Products, his solely owned corporation, would be taxed according to general principles of taxation.

This situation is distinguishable from Arnes v. United States, where the taxpayer received assets of a corporation in redemption of her stock.  In that case the receipt of such assets was part and parcel of resolving community property claims to the stock in the context of a divorce.  Here, by contrast, the stock in Ameritech was relinquished and a severance of the community interest was accomplished through transactions that may be separated from petitioner Praegitzer's receipt of the dividend.  Petitioner Praegitzer did not get the dividend as an integral or necessary step in the marital property settlement; rather it was a bailout of corporate assets, which was carried out at his own instance, and on which he may properly be taxed.  We conclude, therefore, that the distribution of cash and cancellation of

indebtedness were not exempted from tax by section 1041, but were dividends under sections 301, 312, and 316, to petitioner Praegitzer. Accordingly, under respondent's concession, our resolution of the dividend issue in petitioner Praegitzer's case renders the constructive dividend issue in petitioner Dawes' case moot.

To reflect the foregoing as well as concessions by the parties,

<u>Decision will be entered under Rule 155 in docket No. 719-95</u>.

<u>Decision will be entered for petitioner in docket No. 1344-95</u>.