Marsha Hatch INGHAM, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 97–35729.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1999.

Decided Feb. 11, 1999.

James J. Rigos, Seattle, Washington, for the plaintiff-appellant.

Thomas J. Sawyer, United States Department of Justice, Tax Division, Washington, D.C., for the defendant-appellee.

Before: CANBY, and GRABER, Circuit Judges, and BREWSTER,[1] Senior District Judge.

GRABER, Circuit Judge:

Plaintiff, Marsha Ingham, brought this action against defendant, the United States, seeking a tax refund of $362,632 under I.R.C. § 1041(a)(2) and damages for defendant's alleged wrongful disclosure of tax return information in violation of I.R.C.

1. The Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

§ 6103(a). Plaintiff also alleged that defendant spoliated material evidence during her tax-related administrative proceedings. The district court granted summary judgment in favor of defendant on all claims. Plaintiff appeals, challenging the district court's grants of summary judgment and various discovery rulings. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff married Ken Hatch in December 1974. During the following year, the couple purchased a parcel of land on the shore of Lake Washington, near Seattle, for $160,000. The property consisted of four lots, situated in a rectangular pattern, two of which were adjacent to the lake and two of which were adjacent to a roadway. The couple's house was located on one of the two lakefront lots. By 1991, the value of the property, including the house, had appreciated dramatically to about $4 million.

In February 1991, plaintiff and Hatch divorced. As part of the property settlement, plaintiff received the two lakefront lots and the house, and Hatch received the two roadside lots. Plaintiff also agreed to pay Hatch $404,102, representing the value of his community and separate property interests in the lakefront properties. The "Decree of Dissolution of Marriage" provided that Hatch's interests "in the family residence shall be paid by [plaintiff] to [Hatch] immediately upon sale, trade or exchange of said residence but in no event later than five years from the date of entry of the Decree herein." Hatch secured that obligation by obtaining a lien against the two lakefront lots.

Shortly after the divorce, in May 1991, plaintiff and Hatch sold all four lots to the same buyer for $4.25 million. The sale price equaled the combined values of the two lakefront parcels, $3.1 million, and the two roadside parcels, $1.15 million. As required by the divorce decree, plaintiff paid her outstanding debt to Hatch immediately after the sale.

On her federal tax return for 1991, plaintiff reported her share of the sale proceeds, and she paid $382,143 in tax. On April 15, 1993, plaintiff filed her first claim for refund. She argued that she was liable for only half the capital gain on the sale, $91,538, on the theory that the lakefront lots were "community property" when sold. The IRS rejected plaintiff's claim in September 1994. The IRS's disallowance of plaintiff's first claim for refund is not at issue here.

While plaintiff's first claim for refund was pending, the IRS also was reviewing Hatch's tax return for 1991. Hatch had realized significant gain from the sale of the two roadside lots, but had attempted to defer that gain under I.R.C. § 1034, which permits nonrecognition of gain on the sale of a principal residence when that gain is used to buy a new residence. The IRS rejected Hatch's attempted deferment; Hatch then filed an administrative appeal.

In December 1994, during that appeal process, the IRS informed Hatch that the initial audit report relating to his tax deficiency would be withdrawn and amended to assert that he was responsible also for a portion of the capital gain resulting from plaintiff's sale of the lakeside properties. The IRS took that action in order to protect itself against a "whipsaw," that is, the possibility that part of the tax resulting from plaintiff's sale of the lakefront lots would go unpaid if she ultimately prevailed on her claim for refund. See Bouterie v. Commissioner, 36 F.3d 1361, 1373 (5th Cir.1994) ("A whipsaw occurs when taxpayers treat the same transaction involving the same income inconsistently, thus creating the possibility that the income could go untaxed."). When notifying Hatch of the additional tax assessment, the IRS disclosed to Hatch that plaintiff had filed a claim for refund, that plaintiff had based her claim on the community property laws, and that the IRS's primary position was that plaintiff was liable for the tax. The next day, plaintiff's counsel contacted the IRS and accused it of unlawfully disclosing confidential tax return information.

After the disallowance of her first claim, plaintiff filed a second claim for refund in February 1995, this time seeking $362,632. She argued that section 1041(a)(2) did not require her to recognize *any* gain on the sale of her properties, because the sale qualified as a transfer between a spouse and former spouse incident to a divorce. The IRS again

denied plaintiff's claim for refund, concluding that section 1041(a)(2) did not apply to plaintiff's arm's-length sale of the lakefront properties to a third-party buyer.

Before the IRS issued audit reports to plaintiff and to Hatch disallowing their respective claims, an IRS disclosure agent reviewed copies of the reports for potential disclosure violations. The disclosure agent did not review any other materials related to plaintiff's or Hatch's claims, nor did she review any original materials. After completing her assessment and finding no violations, the disclosure agent ordered her clerk to shred the reports. At some later time, plaintiff received copies of both reports.

After the IRS denied her second claim for refund, plaintiff filed this action, seeking a refund of taxes under section 1041(a)(2) and alleging wrongful disclosure of return information in violation of section 6103(a). Plaintiff later amended her complaint to include a claim of spoliation of evidence. The district court granted summary judgment in favor of defendant on all claims.

The district court denied plaintiff's motion for reconsideration. Plaintiff then filed a motion to compel production of the notes made by plaintiff's expert witness, which defendant had not returned. The district court denied plaintiff's motion. Plaintiff now brings this timely appeal.

## STANDARD OF REVIEW

■ We review *de novo* a district court's grant of summary judgment. *See San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir.1998). Likewise, we review *de novo* a district court's interpretation of the Internal Revenue Code. *See Miller v. United States*, 38 F.3d 473, 475 (9th Cir.1994).

2. Section 1041 provides in pertinent part:
    (a) *General rule.*—No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)-
    (1) a spouse, or
    (2) a former spouse, but only if the transfer is incident to the divorce.
    (b) *Transfer treated as gift; transferee has transferor's basis.*—In the case of any transfer of property described in subsection (a)-
    (1) for purpose of this subtitle, property shall be treated as acquired by the transferred by gift, and

## CLAIM FOR REFUND

■ Plaintiff contends that she was not required to pay income tax on any capital gain arising from the sale of the two lakefront properties, because that transaction qualified for nonrecognition as a transfer of property to a former spouse "incident to ... divorce" under section 1041(a)(2).[2] Plaintiff argues that, although she transferred the lakefront properties to a third party and not to Hatch, her former spouse, the sale should be treated as a *constructive* transfer to a former spouse, because she sold the properties in order to satisfy her financial obligation to Hatch under the divorce decree. In other words, plaintiff asserts that, for tax purposes, the transaction should not be treated as a direct sale from plaintiff to the third-party buyer, but rather as a constructive transfer first to Hatch and then a direct sale by Hatch to the third party. Hatch then would be liable for any tax arising from the sale.

Plaintiff bases her argument on the Treasury Department's temporary regulation implementing section 1041, Temp. Treas. Reg. § 1.1041-1T. That regulation provides that, in certain circumstances, "transfers of property to third parties *on behalf of* a ... former spouse" qualify for nonrecognition as a transfer incident to divorce. *Id.* at Q-9 (emphasis added). Such a transfer of property

> will be treated as made directly to the nontransferring spouse (or former spouse) and the nontransferring spouse will be treated as immediately transferring the property to the third party. The deemed transfer from the nontransferring spouse (or former spouse) to the third party is not a transaction that qualifies for nonrecognition of gain under section 1041.

*Id.* at A-9. *See also Arnes v. United States*, 981 F.2d 456, 458 (9th Cir.1992) (observing

    (2) the basis for the transferee in the property shall be the adjusted basis of the transferor.
    (c) *Incident to divorce.*—For purposes of subsection (a)(2), a transfer of property is incident to the divorce if such transfer-
    (1) occurs within 1 year after the date on which the marriage ceases, or
    (2) is related to the cessation of the marriage.
I.R.C. § 1041 (underscore in original).

that, under section 1041, "the tax consequences of any gain or loss arising from the transaction would fall upon the nontransferring spouse for whose benefit the transfer was made, rather than upon the transferring spouse").

In *Arnes*, this court considered the question of when a transfer of property to a third party could qualify for nonrecognition of gain as a transfer incident to divorce under section 1041(a)(2). The court observed that the temporary regulation makes plain that "a transfer by a spouse to a third party can be treated as a transfer to the [former] spouse when it is *'on behalf of'* the [former] spouse." *Id.* at 458–59 (emphasis added). The court then held that, "[g]enerally, a transfer is considered to have been made 'on behalf of' someone if it satisfied an obligation or a liability of that person." *Id.* at 459.

Applying that definition to this case, plaintiff's sale of the lakefront properties was not a transfer "on behalf of" Hatch, because that transaction did not relieve him of any obligation or liability that he owed to plaintiff or to a third party. Instead, the sale merely allowed *plaintiff* to satisfy the debt that *she* owed to her former husband under their property settlement. That fact distinguishes this case materially from *Arnes*, in which the court concluded that the third party's purchase of the plaintiff's stock was a transfer "on behalf of" her former husband because, under their divorce agreement, *he* was required to purchase the stock from the plaintiff. *Id.* The court reasoned that, because the plaintiff's stock transfer had relieved her former husband of a debt that he owed directly to the plaintiff, that transfer qualified for the nonrecognition of gain as a transfer incident to divorce under section 1041(a)(2). *Id.*

Plaintiff attempts to avoid the straightforward application of *Arnes* by arguing that the definition of "on behalf of" is not limited only to transfers that satisfy an obligation or a liability of a former spouse. The definition is broader, plaintiff contends, and encompasses all transfers of property that result in a substantial benefit, in any form, to the nontransferring or former spouse. Plaintiff bases her argument on this court's conclusion in *Arnes* that "[the plaintiff's] transfer to [the third party] did relieve [her former husband] of an obligation, and *therefore constituted a benefit to [him]*." *Id.* (emphasis added). Relying on that wording, plaintiff argues that the sale of the lakefront lots was "on behalf of" Hatch, because his indirect receipt of a portion of the sales proceeds constituted a "benefit" to him.

Plaintiff's expansive definition of "on behalf of" cannot be squared with *Arnes* (or, of course, with the text of section 1041 itself).[3] The focus of the court's analysis in *Arnes* was not whether the plaintiff's former husband had received some general benefit as a result of the plaintiff's transaction, but rather whether the transaction had satisfied some legal obligation or liability owed *by* her former husband. In defining the term "on behalf of," the court relied on two cases, *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929), and *Schroeder v. Commissioner*, 831 F.2d 856 (9th Cir.1987), in which the transactions at issue involved a third party's payment of a taxpayer's own financial obligation. *See Old Colony*, 279 U.S. at 719–20, 49 S.Ct. 499 (involving an employer's payment of an employee's income tax); *Schroeder*, 831 F.2d at 857–58 (involving a corporation's assumption of a shareholder's bank note). In both cases, the courts held that, because the third-party payment had relieved the taxpayer of a per-

---

**3.** We recognize that at least one court has been confused by the wording of *Arnes*. In *Blatt v. Commissioner*, 102 T.C. 77, 1994 WL 26306 (1994), the United States Tax Court expressed uncertainty as to how to apply *Arnes*. One judge observed:

As a preliminary matter, the Court of Appeals [for the Ninth Circuit] found a common tax meaning for the term "on behalf of": "Generally, a transfer is considered to have been made 'on behalf of' someone if it satisfied an obligation or a liability of that person." The Court of Appeals for the Ninth Circuit held,

however, that "[the wife's] transfer to ... [the corporation] did relieve ... [the husband] of an obligation, *and therefore constituted a benefit to [him]*".... [W]e cannot say for sure what test the Court of Appeals [for the Ninth Circuit] would apply to facts such as ours.... Clearly, the "any-benefit" test of the *Arnes* District Court is one we think to be wrong.

*Blatt*, 102 T.C. at 84 (Halpern, J., concurring) (emphasis and some alterations in original; some alterations added) (internal citations omitted).

sonal debt, the taxpayer in effect had earned income and, therefore, was liable for the corresponding tax consequences. *See Old Colony,* 279 U.S. at 729–30, 49 S.Ct. 499 (holding that the payment of an employee's tax by an employer constituted taxable income to the employee); *Schroeder,* 831 F.2d at 859 (holding that a corporation's assumption of a shareholder's bank note was a taxable constructive dividend). Adopting that rationale, the court reasoned in *Arnes* that, by relieving her former husband of an obligation to pay, the plaintiff's transfer had created income for him equal to the value of the obligation. 981 F.2d at 459. As a result, he was liable for the tax resulting from that accretion of wealth. *Id.*

Plainly, our "on-behalf-of" inquiry in *Arnes* turned on whether the plaintiff's transfer of property had relieved her former spouse of a specific legal obligation or liability. Because plaintiff's sale in this case did not satisfy any such obligation, the district court correctly held that she was not entitled to a tax refund under section 1041(a)(2).

## UNLAWFUL DISCLOSURE OF TAXPAYER INFORMATION

■ I.R.C. § 7431(a)(1) authorizes a taxpayer to bring an action against the United States if any of its officers or employees "knowingly, or by reason of negligence, inspects or discloses any return or return information ... in violation of any provision of section 6103." Section 6103(a), in turn, "lays down a general rule that 'returns' and 'return information' ... shall be confidential," *Lampert v. United States,* 854 F.2d 335, 336 (9th Cir.1988) (internal citation and quotation marks omitted), "except as authorized by [the Internal Revenue Code]." I.R.C. § 6103(a). That "statute is designed to protect the flow of information between taxpayers and the Internal Revenue Service by controlling the disclosure of tax information by government employees." *Lampert,* 854 F.2d at 336.

■ Plaintiff contends that defendant's disclosures to Hatch (of the facts that she had filed a claim for refund, that she had based that claim on a community property theory, and that the IRS's primary position was that plaintiff was liable for the tax) constituted a wrongful disclosure of return information in violation of section 6103. Defendant concedes that the information released to Hatch constituted "return information," but defends on the ground that the disclosures were proper under I.R.C. § 6103(h)(4), which authorizes disclosures in "administrative proceeding[s] pertaining to tax administration" in certain statutorily defined circumstances. Alternatively, defendant argues that, even if the disclosures were unlawful, it cannot be held liable, because the disclosures were made in good faith. Without deciding whether the disclosures satisfied the requirements of section 6103(h)(4), we hold that the good-faith exception protects defendant against liability.

■ I.R.C. § 7431(b)(1) provides that "[n]o liability shall arise ... with respect to any inspection or disclosure which results from a good faith, but erroneous, interpretation of section 6103." The good-faith inquiry turns on whether the defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *McDonald v. United States,* 102 F.3d 1009, 1011 (9th Cir.1996) (internal citation and quotation marks omitted).

Applying that standard here, the IRS acted in good faith in disclosing the information to Hatch. The Internal Revenue Manual ("Manual") instructs agents that disclosures to third parties are permissible in whipsaw situations. The Manual states:

> Following are examples of third party disclosures in administrative proceedings which satisfy the conditions of IRC 6103(h)(4)(B) or (C):
>
> .    .    .    .    .
>
> (c) Whipsaw situations where there is a transaction between two parties and, depending on how it is characterized, the transaction will benefit one and hurt the other from a tax standpoint. In such cases, each party reports the transaction in a way which provides them with the *most* beneficial tax results.

Manual (22)63(3) (emphasis in original).

Faced with a whipsaw situation in this case, the IRS made a very limited disclosure of plaintiff's tax return information. The action was consistent with the Manual, and the agent's reliance on the Manual as an interpretation of section 6103(h)(4) was ob-

**1246**

jectively reasonable. *See McDonald,* 102 F.3d at 1011 (holding that a disclosure consistent with an IRS regulation was a good-faith interpretation of section 6103(h)(4)(C)). Accordingly, the district court correctly granted summary judgment in favor of defendant on plaintiff's claim of wrongful disclosure.

## SPOLIATION OF EVIDENCE

█ Plaintiff further maintains that the district court erred by not exercising its discretionary power under Fed.R.Civ.P. 37 to sanction defendant for the destruction of the file that defendant's disclosure officer reviewed. Plaintiff complains that the district court should have followed Washington state law and imposed a rebuttable presumption against defendant that the spoliated evidence would have been unfavorable, which in turn would have allowed her claim to survive a summary judgment motion. *See Henderson v. Tyrrell,* 80 Wash.App. 592, 910 P.2d 522, 531–32 (1996) (discussing spoliation of evidence under Washington law). "We review the district court's refusal to impose sanctions for abuse of discretion." *Rent-A-Center, Inc. v. Canyon Televison & Appliance Rental, Inc.,* 944 F.2d 597, 602 (9th Cir.1991).

█ To be actionable, the spoliation of evidence must damage the right of a party to bring an action. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.,* 982 F.2d 363, 371 (9th Cir.1992). Here, the shredding of the files by the IRS disclosure officer in no way prejudiced plaintiff's capacity to bring or to prosecute this action. The shredded materials were merely *copies* of original reports prepared by the IRS regarding plaintiff's and Hatch's respective tax liabilities; the disclosure officer never had any original documents. Additionally, plaintiff received copies of these same reports. The IRS employee, who gave the documents to the disclosure agent, testified that "I'm not aware of any documents that were given to [the disclosure officer] that you [plaintiff's attorney] don't have."

Plaintiff contends that there exists a dispute of material fact as to whether the disclosure agent shredded documents in addition to the reports. Plaintiff points to the facts that the disclosure agent did not maintain a file of the materials after her review, that there was a one-inch estimated discrepancy in thickness between the documents produced and the materials that the disclosure agent recalled reviewing, and that the disclosure agent suggested some changes in the final report, which plaintiff may not have received. Those facts, individually and collectively, are insufficient to raise a genuine issue of material fact. None of those facts establishes that the disclosure agent shredded documents other than the reports or that the loss of such documents prejudiced plaintiff's case. In the circumstances, the district court did not commit error by refusing to sanction defendant for the spoliated materials.

## DISCOVERY ISSUES

█ Finally, plaintiff asserts that the district court erroneously entered summary judgment, because three discovery errors tainted the proceedings: (1) defendant produced improperly redacted documents; (2) defendant failed to return the files of plaintiff's former lawyer; and (3) defendant failed to return the notes of plaintiff's expert witness. A district court's discovery rulings are reviewed for an abuse of discretion. *See Gager v. United States,* 149 F.3d 918, 920 (9th Cir.), *cert. denied,* — U.S. ——, 119 S.Ct. 412, 142 L.Ed.2d 335 (1998).

█ With respect to the first and second alleged errors (improper redaction and failure to return files), plaintiff did not raise them before the district court, so we do not consider them. *See United States v. Martinez–Salazar,* 146 F.3d 653, 660 (9th Cir. 1998) ("It is well settled that failure to raise an issue in the district court waives the argument."). With respect to the third alleged error, defendant's retention of plaintiff's expert's notes, that issue is moot, because defendant already has provided copies of those notes to plaintiff.

## CONCLUSION

The district court's grant of summary judgment in favor of defendant on all claims is AFFIRMED.