T.C. Summary Opinion 2001-32


UNITED STATES TAX COURT


CONRAD GEORGE OLSEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16178-99S.                    Filed March 19, 2001.


<u>Bradley S. Shannon</u>, for petitioner.

<u>Gregory M. Hahn</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax in the amount of $25,179 for the 1994 tax year, an addition to tax under section 6651(a) in the amount of $6,295, and an accuracy-related penalty under section 6662(a) in the amount of $5,036.

The issues for decision are:  (1) Whether proceeds from a sale of petitioner's property qualify for nonrecognition treatment under section 1041(a)(2); (2) whether petitioner is liable for an addition to tax for failure to timely file his return under section 6651(a); and (3) whether petitioner is liable for an accuracy-related penalty under section 6662(a) for the year in issue.

This case was submitted fully stipulated pursuant to Rule 122.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time of filing the petition, petitioner resided in Onalaska, Washington.

Petitioner and Leah Helen Olsen (Ms. Olsen) were married on December 2, 1969.  Shortly thereafter, they purchased a home situated on 30 acres of timberland located at 235 Tryon Road, Onalaska, Washington (Tryon Road property).

In 1993, petitioner and Ms. Olsen separated and divorced.  A Property Settlement Agreement (agreement) was executed by the parties on November 10, 1993.  Pursuant to the agreement, petitioner received specified personal property and the Tryon

Road property as his sole and separate property. Ms. Olsen received specified personal property, real estate located at 211 Tryon Road (211 Tryon Road property), and real estate located in Cosmopolis, Washington (Cosmopolis property). On November 10, 1993, petitioner and Ms. Olsen conveyed and quitclaimed all of their respective interests in the Tryon Road property, the 211 Tryon Road property, and the Cosmopolis property to the other party, according to the agreement.

In order to equalize the property division, the agreement required petitioner to pay $103,000 to Ms. Olsen as follows: $51,500 no later than May 10, 1994, and an additional $51,500, plus interest, no later than November 10, 1994. To secure the obligation petitioner owed to Ms. Olsen, petitioner conveyed a deed of trust on the Tryon Road property to Title Guaranty Company of Lewis County. Immediately prior to the conveyance of the deed of trust on November 10, 1993, petitioner held legal title to the Tryon Road property free and clear of any liens, mortgages, or other encumbrances on the property. The agreement did not require petitioner to sell any portion of the Tryon Road property to satisfy the $103,000 obligation owed to Ms. Olsen.

On February 17, 1994, petitioner sold 17 acres of the 30 acres of land and timber located on the Tryon Road property to North Fork Timber Company for $175,000. Of that amount,

$103,203.22[1] was paid directly by North Fork Timber Company to Ms. Olsen in satisfaction of petitioner's obligation under the agreement. Petitioner received a note receivable (note) for the balance of the purchase price, or $65,000, from North Fork Timber Company. The terms of the note stated an 8-percent interest rate and payments of $1,586.84 per month, payable over 48 months beginning on March 17, 1994, and ending on February 8, 1998.

At the time the Tryon Road property was sold to North Fork Timber Company on February 17, 1994, Ms. Olsen did not have any outstanding liabilities payable to, or other obligations owed, to North Fork Timber Company, Title Guaranty Company of Lewis County, or petitioner, nor did the sale of the Tryon Road property to North Fork Timber Company relieve Ms. Olsen from any obligations owed to North Fork Timber Company, Title Guaranty Company of Lewis County, or petitioner.

During the taxable year 1994 petitioner received $3,981.05 in interest income. Petitioner also received a 1994 Form 1099-S, Proceeds From Real Estate Transactions, from Title Guaranty Company of Lewis County which reported real estate sales proceeds in 1994 of $175,000 from the sale of the Tryon Road property. Petitioner contends that he did not realize a taxable gain on the sale of the Tryon Road property, and, based upon this belief, did

---

[1]    This amount represents the $103,000 obligation plus interest.

not file a 1994 return to report the $3,981.05 in interest income he received in 1994. Petitioner did not personally perform any research or other investigation to confirm his belief that he did not realize a taxable gain on the sale of the Tryon Road property or that he was not required to file a tax return for the 1994 taxable year.

Petitioner did not file a Federal income tax return for the taxable year 1994 until November 30, 1998, after the Internal Revenue Service had inquired why he had not filed a tax return. On his 1994 Federal income tax return, petitioner reported $3,981.05 of taxable interest and a capital loss of $453.59 from the sale of the Tryon Road property. Petitioner calculated the capital loss from the sale of the Tryon Road property by increasing his cost basis in the Tryon Road property by $103,203.22. The following is a summary of petitioner's loss calculation:

| | |
|---|---|
| Sales price | $175,018.13 |
| Selling charges | ( 4,756.51) |
| Adjusted sale price | $170,261.62 |
| | |
| Purchase price | $ 65,092.99 |
| Logging permit | 50.00 |
| Surveys | 2,369.00 |
| Adjusted basis | $ 67,511.99 |
| | |
| Preliminary gain | $102,749.63 |
| Payment to Ms. Olsen | ( 103,203.22) |
| Reported loss on sale | ($ 453.59) |

In the notice of deficiency, respondent determined that petitioner realized a gain of $102,728 on the sale of the 17 acres of the Tryon Road property as calculated below:

| | |
|---|---|
| Sales price | $175,018.13 |
| Selling charges | ( 4,756.51) |
| Adjusted sale price | $170,261.62 |
| | |
| Purchase price | $ 65,092.99 |
| Logging permit | 50.00 |
| Surveys | 2,369.00 |
| Adjusted basis | $ 67,511.99 |
| | |
| Preliminary gain | $102,749.63 |
| Other | 21.63 |
| Adjusted gain on sale | $102,728.00 |
| Reported loss on sale | ($ 453.59) |
| Proposed adjustment | $102,274.41 |

Section 1041(a)(2)

Section 1041(a)(2) provides for nonrecognition of gain or loss on a transfer of property from an individual to a former spouse provided that the transfer to the former spouse is incident to the divorce.[2]  For a transaction to be considered

_____

[2]    Although section 1041 applies to both spouses and former spouses, only "former spouse" will be used in the discussion of the statute.

      SEC. 1041.  TRANSFERS OF PROPERTY BETWEEN SPOUSES OR INCIDENT TO DIVORCE.

      (a) General Rule.--No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)--
          (1) a spouse, or
          (2) a former spouse, but only if the transfer is incident to the divorce.

(continued...)

"incident to divorce", it must: (1) Occur within 1 year after the date on which the marriage ceases, or (2) is related to the cessation of marriage.  Sec. 1041(c)(1) and (2).  If the transfer of the Tryon Road property had been directly between petitioner and Ms. Olsen, section 1041(a)(2) and (c)(1) would be satisfied because the transfer occurred within 4 months of the agreement. See Godlewski v. Commissioner, 90 T.C. 200, 204 n.7 (1988). However, because the transfer did not occur directly between petitioner and Ms. Olsen, but rather between petitioner and North Fork Timber Company, a third party, the transfer must be "on behalf of" the former spouse within the meaning of section 1.1041-1T(c), Q&A-9, Temporary Income Tax Regs., 49 Fed. Reg. 34452 (Aug. 31, 1984) (Q&A-9), in order to qualify for nonrecognition treatment.  A transfer of property to a third party "on behalf of" a former spouse will qualify under section 1041 in three situations:  (1) Where the transfer to the third party is required by a divorce or separation instrument; (2) where the transfer to the third party is pursuant to the written request of the former spouse; or (3) where the transferor

---

[2](...continued)

>                    *    *    *    *    *    *    *
>         (c) Incident to Divorce.--For purposes of
>     subsection (a)(2), a transfer of property is incident
>     to the divorce if such transfer--
>             (1) occurs within 1 year after the date on
>         which the marriages ceases, or
>             (2) is related to the cessation of the
>         marriage.

receives from the former spouse a written consent or ratification of the transfer to the third party. See id. In the three situations described above, the transfer of property will be treated as made directly to the nontransferring former spouse and the nontransferring former spouse will be treated as immediately transferring the property to the third party. See id. The deemed transfer from the nontransferring former spouse does not fall under section 1041 and is a taxable transaction to the nontransferring former spouse. See id.

In order to prevail, petitioner must show that the transfer of the Tryon Road property qualifies as one of the three situations described in Q&A-9. Petitioner has failed to do so. Petitioner's sale of the Tryon Road property was not pursuant to the terms of the agreement as required under the first situation described in Q&A-9. In fact, petitioner stipulated that the agreement "did not require petitioner to sell any portion of the Tryon Road property to satisfy the $103,000 obligation owed to Ms. Olsen." Petitioner was free to sell other assets or obtain a loan rather than sell the Tryon Road property to satisfy his separate monetary obligation to Ms. Olsen. Moreover, petitioner failed to show that the transfer of the Tryon Road property falls under the second or third situation described in Q&A-9. The record contains no evidence showing either a written request by

Ms. Olsen to sell the property to a third party, or a written consent or ratification of the transfer to a third party.

Petitioner cites Read v. Commissioner, 114 T.C. 14 (2000), to support his contention that the transfer of the Tryon Road property to North Fork Timber Company was on behalf of Ms. Olsen. We find petitioner's reliance on Read misplaced. In Read, we held that Ms. Read's transfer of MMP[3] stock to MMP was "on behalf of" Mr. Read (the nontransferring spouse) because it qualified under the first situation described in Q&A-9. Id. at 37-38. According to the divorce agreement in that case, Mr. Read, or at his election MMP or MMP's ESOP, was obligated to purchase Ms. Read's MMP stock. See id. at 17-19. As stated above, petitioner failed to show that any of the three situations described in Q&A-9 were satisfied.

In Ingham v. United States, 167 F.3d 1240 (9th Cir. 1999), the Court of Appeals for the Ninth Circuit[4] held that transfers of property to a third party on behalf of a former spouse qualify for nonrecognition if the transfer satisfied an obligation or a

---

[3]  MMP was a corporation wholly owned by Mr. Read and Ms. Read.

[4]  According to the rule set forth in Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we are obligated to follow the law as stated by the Court of Appeals in the circuit to which a case would be appealable. Accordingly, we are bound by the reasoning in Ingham v. United States, 167 F.3d 1240 (9th Cir. 1999).

liability of the nontransferring former spouse.[5]  See id. at
1244.  In Ingham and the instant case, the sale of the property
did not relieve the nontransferring former spouse of any
obligation or liability that the nontransferring former spouse
owed to the transferring former spouse or the third party.  The
Court of Appeals stated:  "The sale merely allowed * * * [Ms.
Ingham] to satisfy the debt that she owed to her former husband
under their property settlement."  Id. at 1244.  Similarly,
petitioner's sale of the Tryon Road property satisfied the debt
that he owed to Ms. Olsen, rather than satisfy an obligation owed
by Ms. Olsen to North Fork Timber Company, the third party, or
petitioner as required under Ingham, supra at 1244, and Read v.
Commissioner, supra at 35-36.

After reviewing the record, we find that petitioner has
failed to show that the transfer of the Tryon Road property to
North Fork Timber Company was "on behalf of" Ms. Olsen.
Therefore, we conclude that the gain from the transfer of the
Tryon Road property to North Fork Timber Company does not fall
under section 1041(a) and is taxable to petitioner.

Section 6651(a)

Respondent determined an addition to tax as a result of
petitioner's failure to timely file his tax return for 1994.

_____

[5]    We note that this standard was also applied in Read v.
Commissioner, 114 T.C. 14, 35-36 (2000).

Section 6651(a)(1) imposes an addition to tax for failure to timely file a tax return. The addition to tax is equal to 5 percent of the amount of the tax required to be shown on the return if the failure to file is not for more than 1 month. See sec. 6651(a)(1). An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues, to a maximum of 25 percent of the tax. See id.

The addition is applicable unless petitioner establishes that his failure to file was due to reasonable cause and not willful neglect. See id. If petitioner exercised ordinary business care and prudence and was nonetheless unable to file his return within the date prescribed by law, then reasonable cause exists. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. "Willful neglect" means a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioner's 1994 Federal income tax return was due on April 17, 1995. Petitioner did not file his 1994 Federal income tax return until November 30, 1998, after the commencement of the audit.

Petitioner contends that he was not required to file a 1994 return to report the $3,981.05 in interest income because he relied on information provided in Table 1-1, 1994 Filing Requirement Chart for Most Taxpayers, of the 1994 Federal income

tax instructions. Table 1-1 informed petitioner that a single taxpayer under the age of 65 with a gross income of at least $6,250 must file a tax return. Petitioner believed that he was not required to file a 1994 tax return because his gross income, which incorrectly did not include the gain from the sale of the Tryon Road property, was under $6,250.

However, Table 1-1 also provides the following information: "Gross income means all income you received in the form of money, goods, property, and services that is not exempt from tax, including any gain on the sale of your [main] home (even if you may exclude or postpone part or all of the gain)."

Petitioner received a Form 1099-S, Proceeds From Real Estate Transactions, from Title Guaranty Company of Lewis County reporting the real estate sale proceeds in 1994 of $175,000. Petitioner stipulated that he did not make any attempt to determine whether he should report the amount shown on the Form 1099-S on his 1994 Federal income tax return. Petitioner has failed to show us that he exercised ordinary care and prudence in this case. Respondent is sustained on this issue.

Section 6662(a)

The last issue for decision is whether petitioner is liable for an accuracy-related penalty pursuant to section 6662(a). Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment which is attributable to negligence or disregard

of rules or regulations. See sec. 6662(b)(1). Negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985)(quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. 43 T.C. 168 (1964) and T.C. Memo. 1964-299). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). No penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. See sec. 6664(c). The determination of whether a taxpayer acted with reasonable cause and good faith within the meaning of section 6662(c) is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner failed to show that he had a reasonable basis for his belief that the gain from the Tryon Road property was not taxable. He failed to make reasonable inquiries as to whether the income reported on a Form 1099-S was taxable. See Rosenbaum v. Commissioner, T.C. Memo. 1992-287, affd. 998 F.2d 1016 (7th Cir. 1993).

On the basis of the record, we hold that petitioner is liable for an accuracy-related penalty under section 6662(a) for the 1994 tax year.

We have considered all arguments by the parties, and, to the extent not discussed above, conclude that they are irrelevant or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.