323 F.3d 1210
 Daniel ABELEIN, Susan Abelein, William E. Allen, Lars Andres, Henry Andrew, Henry Andrew, Karla Andrew, Robert Andrews, Carol Andrews, Roy Barnes, Antonette Barnes, Ernest Bartak, Ann Bartak, Clarence Beardsley, Janice Beardsley, Martin Beltran, Jeffry Bergamyer, Nadine Bergamyer, Robert Bergevin, Grace Bergevin, Donald Berry, Helen Berry, Gary Blackburn, Margaret Blackburn, Eugene Botkins, Sandra Bradford, David Britton, Judy Britton, John Brock, Betty Brock, Kenneth Buehner, Rosemarie Buehner, Bruce Bulger, Michael Byrne, Robert Capehart, Ingrid Capehart, Dale Casselman, Donn Casselman, Roger Carter, Lora Carter, Roger Catlow, Mary Catlow, Boyd Chisholm, Anita Chisholm, Donald Clayton, Yvonne Clayton, Richard Colan, Tom Costello, Mary Costello, Gary Cross, Carla Cunningham, Michael Dale, Ellen Dale, Christopher Doyel, Verna Doyel, Mila Durkin, Don Ellison, Pamela Ellison, Thomas Emerson, Lydia Emerson, Donald Ertz, Dorothea Ertz, Helen Foy, Marvin Franklin, Barbara Franklin, Gordon Freeman, Ilene Freeman, Jesse Fruge, Michael Gallagher, Diane Gallagher, Thomas George, Merra George, Alan Gott, Linda Gott, Gary Hansen, Johnean Hansen, James Harper, Roxanne Harper, Charles E. Adams, III, Curt D. Barnes, Gary Hamm, Mary Hamm, David Higdon, Brent Hubbard, Dorinda Hubbard, Fred McNatt, Patricia McNatt, James Stroud, Mary Stroud, Gilbert Hay, III, Dale Hendrickson, Marian Hendrickson, Kenneth Herman, Ray Hernandez, Miriam Hernandez, William Holzendorf, Barbara Holzendorf, Frank Hubbart, Janetta Hubbart, Steve Hughes, Teresa Hughes, Sylvester Hullum, Paul Inserra, Michelle Inserra, John Ittner, Eleanor Ittner, Robert Jenkins, Eyvonne Jenkins, Bobbie Johnson, Jarhta Johnson, Dory Jones, Dagmar Jones, Leroy Kassakatis, Donna Kassakatis, John Keizer, Judy Keizer, Michael Keller, Jin Keller, Neal Kempt, Karen Kempt, Robert Klopschinski, Carole Klopschinski, Richard Lawrence, Mena Lawrence, James Lindley, Ann Lindley, Travis Lindley, Barbara Lindley, William Lindley, Joanne Lindley, Kenneth Lockwood, Patricia Lockwood, Marcus Lowe, Susan Lowe, Dan Lynch, Florence Lynch, Robert Mains, Elisabeth Mains, Alfred Malinowski, Edgar Marco, Diane Marco, Walter Marlatt, Audrey Marlatt, Glenn Matherne, Merril Matherne, Gary McDonough, Edwin McGifford, Verna McGifford, Thomas McIntyre, Deborah McIntyre, Robert McLaughlin, Gerald McNeely, Deborah McNeely, Roger Meier, Karren Meier, John Mekulsia, James Moffett, Frances Moffett, Mike Moore, Vickie Moore, Glenn Mortensen, Dennis Nash, Cathy Nash, Helen Nash, Curt Nelson, Gary Parker, Judy Parker, Dale Pemberton, Irene Pemberton, Richard Phillips, Gaylene Phillips, Mike Ponder, Debbie Ponder, Larry Potts, Shirley Potts, James Quinlivin, Rita Quinlivin, Daniel Quinones, Marilyn Moody Quinones, a Don, Bernice Ray, Michael Rezek, Jocelyn Rezek, Mike Rocha, Andrea Rocha, Norman
Rosekrans, Sue Rosekrans, Jay Schneider, Michael Selzer, Leon Shepard, Mary Shepard, Richard Sherrets, Ronnie Shiplet, Louetta Shiplet, Jane Siddon, Gurbaksh Singh, Gurmit Singh, Leland Smith, Joe Sotro, Jr., Cynthia Sotro, Joe Sotro, Sr., Josephine Sotro, Richard Steele, Wanda Steele, Will Steen, Jr., Laura Steen, Howard Stockwell, Walter Stubberud, Jean Stubberud, Silas Suits, Bette Suits, Matthew Teston, Larry Thompson, Judy Thompson, Rocco Toscano, Kathleen Toscano, Robert Tulp, Claudette Tulp, Ed Van Scoten, Mary Van Scoten, Ron Van Scoten, Cynthia Van Scoten, Daniel Vash, Carla Vash, Lloyd Walker, Felicia Walker, Dale Warner, Margaret Warner, Charles Wellington, Micki Wellington, Richard Wenborne, Noreen Wenborne, Mike Williams, Sherly Williams, Gene Wolford, John Wunderlich, Nancy Wunderlich, Dan Wyatt, Darlene Wyatt, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 02-35054.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 2003.
 Filed March 27, 2003.
 
 Terri A. Merriam, Seattle, Washington, for the plaintiffs-appellants.
 Anthony T. Sheehan, United States Department of Justice, Tax Division, Washington, DC, for the defendant-appellee.
 Appeal from the United States District Court for the Western District of Washington; Marsha J. Pechman, District Judge, Presiding. D.C. No. CV-99-02038-MJP.
 Before O'SCANNLAIN, FERNANDEZ and FISHER, Circuit Judges.
 OPINION
 FERNANDEZ, Circuit Judge.
 
 
 1
 After the Internal Revenue Service audited the comings, goings and machinations involving cattle and sheep breeding tax shelter partnerships organized by Walter J. Hoyt III, it sent out Notices of Final Partnership Administrative Adjustment (FPAA) forms to Daniel Abelein and other investors whom it considered to be partners. Abelein and numerous other investors (hereafter collectively Abelein) then brought this action against the United States on the basis that their confidential tax return information had been improperly disclosed. See 26 U.S.C. § 7431(a)(1). The district court granted summary judgment to the United States, and Abelein appealed. We affirm.
 
 BACKGROUND
 
 2
 Walter J. Hoyt III formed approximately 130 partnerships between 1971 and 1996, about 84 of which are the subject of this lawsuit. Investigations by the IRS and other government agencies revealed that the Hoyt partnerships bought interests in livestock that did not exist, thereby fraudulently reporting tax deductions and other items to which they were not entitled. In February 2001, Hoyt was convicted of mail fraud, bankruptcy fraud, and money laundering arising out of his activities. Abelein was, or had been, a partner in one or more of those partnerships.
 
 
 3
 When the IRS began its audits, it discovered that the partnership records were unreliable to say the least. It was exceedingly difficult to know who was actually a partner at any given point. For example, the IRS decided that it could not rely upon the normal documents — for example, the Schedule K-1 — in making decisions about who was or who was not a partner. Various discrepancies, which need not be detailed here, led the IRS agents to that conclusion. Indeed, Hoyt himself told agents that he moved loyal partners about at will and treated some people who were no longer contributing as if they had never been partners. This was so that his loyalists would not have tax liabilities arising out of the minor difficulty that the cattle or sheep supposedly owned by some of the partnerships were phantoms.
 
 
 4
 Faced with that dilemma, the IRS decided that it was not able to accurately ascertain at the partnership level the identities of those who were the real investors in any given partnership at any given time, although it could determine that certain individuals had been members of a partnership at one time. It, therefore, adopted an approach that has been dubbed "once a partner, always a partner," unless you prove otherwise.
 
 
 5
 Having so cracked the dulcarnon with which it was faced, the IRS sent out the FPAAs for each partnership for the tax years 1994, 1995, and 1996, and listed the "partners" and their allocable percentages of the various partnership items on those FPAAs. In effect, that amounted to the partners' capital account figures as nearly as the IRS could determine them.
 
 
 6
 Principally, Abelein asserts that many people listed as partners really were not and, therefore, they should not have received the notices and, therefore, the IRS must have violated the strictures of 26 U.S.C. § 6103 when it sent those notices out. The district court granted judgment against Abelein, and this appeal followed.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 7
 The district court had jurisdiction pursuant to 26 U.S.C. § 7431(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 8
 We review the district court's grant of summary judgment to the United States de novo. Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994). Likewise, we review the district court's interpretation of the Internal Revenue Code de novo. Ingham v. United States, 167 F.3d 1240, 1243(9th Cir.1999).
 
 DISCUSSION
 
 9
 There is no doubt that tax return information was disclosed by the IRS when it sent out the FPAAs. Nor is there any doubt that if the disclosure was unauthorized, the United States may have to answer in damages. See 26 U.S.C. § 7431(a), (c); cf. 26 U.S.C. § 7431(b) (exceptions). Thus, the first question is whether the disclosure was authorized. If it was, we need not consider whether the disclosure was erroneous but made in good faith. See id. § 7431(b). In fact, the district court did not answer the good faith question. With that in mind, we begin our periplus of that enisled wilderness known as the Internal Revenue Code.
 
 
 10
 The general rule is that "except as authorized by this title ... no officer or employee of the United States ... shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section." Id. § 6103(a). Well, fine; the general rule is clear enough, but the first phrase requires us to move on to see if there is an exception which applies here. As we shall show, there is. The statute provides that:
 
 
 11
 A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only —
 
 
 12
 (A) if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title;
 
 
 13
 (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;
 
 
 14
 (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or....
 
 
 15
 26 U.S.C. § 6103(h)(4). This presents us with two major[1] questions: (1) is the procedure which led to the FPAAs an "administrative proceeding," and (2) was Abelein a party to the proceeding?
 
 
 16
 A. The Disclosure Was in an Administrative Proceeding
 
 
 17
 Abelein argues that this was an audit and under § 6103 audits are not "administrative proceedings." The argument has some plausibility; it has split the circuits. The Tenth Circuit has opined that audits are administrative proceedings. See First W. Gov't Sec., Inc. v. United States, 796 F.2d 356, 360-61 (10th Cir.1986); see also Norman E. Duquette, Inc. v. Comm'r, 110 F.Supp.2d 16, 20 (D.D.C.2000). The Fourth Circuit has issued a contrary opinion. See Mallas v. United States, 993 F.2d 1111, 1122-24 (4th Cir.1993). We have had the opportunity to decide cases which have subtended that issue, but have done so on other grounds. We have looked, instead, to the 26 U.S.C. § 7431(b)(1) "good faith" exception. See Ingham, 167 F.3d at 1245-46; McDonald v. United States, 102 F.3d 1009, 1011 (9th Cir.1996). In another context, we have referred to audits as administrative proceedings. See Delpit v. Comm'r, 18 F.3d 768, 770, 772 & n. 3 (9th Cir.1994). Thus, it is a rather interesting debate, but we need not engage in the full scale battle over whether "audits" are always administrative proceedings. We need only address ourselves to the skirmish before us — was the proceeding at hand an administrative proceeding? We think it pellucid that it was.
 
 
 18
 The proceeding we deal with here was the very special kind that Congress created for, among other things, the purpose of achieving equity for taxpayers and the government when partnerships are involved in tax matters. That was a part of the Tax Equity and Financial Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324 (TEFRA). Under TEFRA, the determination of partnership items is made at the partnership level and binds the individual partners thereafter. Because that is true, Congress provided that:
 
 
 19
 The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of —
 
 
 20
 (1) the beginning of an administrative proceeding at the partnership level with respect to a partnership item, and
 
 
 21
 (2) the final partnership administrative adjustment resulting from any such proceeding....
 
 
 22
 26 U.S.C. § 6223(a); see also id. § 6224(a) (partner can participate in administrative proceedings).
 
 
 23
 What Abelein attacks is the giving of the very notice that § 6223(a)(2) requires the Secretary to give to partners. Setting aside for a moment the issue of whether those given notice really were partners,[2] and focusing on the remainder of the section, it is plain that this was an "administrative proceeding." Congress said so. The regulations, not surprisingly, have carried out that concept. See, e.g., Temp. Treas. Reg. § 301.6223(a)-1T(b) (referring to a notice sent by the IRS to the tax matters partner as a "notice of the beginning of an administrative proceeding"); id. § 301.6223(a)-2T (specifying the procedure for the IRS to withdraw notice of the beginning of an administrative proceeding); id. § 301.6224(a)-1T (stating that all partners, including indirect partners, have the right to participate in any phase of the administrative proceeding).
 
 
 24
 All of the above being so, it would be at least middling strange were we to hold that issuance of the FPAA was not part of an administrative proceeding within the meaning of 26 U.S.C. § 6103(h)(4). It would overlook "the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." Comm'r v. Lundy, 516 U.S. 235, 250, 116 S.Ct. 647, 655, 133 L.Ed.2d 611 (1996) (internal quotation marks omitted); see also Montero-Martinez v. Ashcroft, 277 F.3d 1137, 1142 (9th Cir.2002). Applying that rule here would not lead to an "absurd or glaringly unjust result." Taylor v. Dir., Office of Workers Comp. Programs, 201 F.3d 1234, 1240(9th Cir.2000). In fact, the contrary is the case. Were we to hold that 26 U.S.C. § 6223(a)(2) directs the sending of an FPAA notice at the close of the "administrative proceeding," but that the disclosure is improper because it is not in an "administrative proceeding" under 26 U.S.C. § 6103(h)(4), that would suggest that either we, or the tax laws, are even more anserine than some commentators have suggested.
 
 
 25
 In fine, the FPAAs were sent out as part of an administrative proceeding within the meaning of 26 U.S.C. § 6103(h)(4).
 
 B. Abelein Was a Party
 
 26
 Well, says Abelein, even if it was an administrative proceeding, some of the individuals listed as partners really should not have been. Thus, Abelein argues, they were not "parties" to the proceeding and 26 U.S.C. § 6103(h)(4) requires that they be parties. The argument is based on the thought that if it turns out that a person was not a partner, he could not have been a party to the proceeding that decided that question in the first place. We do not agree; indeed, the argument is a bit of a non sequitur.
 
 
 27
 Under 26 U.S.C. § 6231, a person need not be a "partner" as such; he need only be one whose "tax liability under subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." If the IRS has included a person as a participant at the partnership level, he is surely in danger of having his tax liability affected, especially if, in the long run, the IRS turns out to be correct. Surely, he should have a right to participate in the proceeding; surely he does. Similarly, a person who the IRS decides is a partner and allocates partnership items to is certainly a party to that proceeding, whether he ultimately turns out to be a partner or not. How could the IRS possibly include a person at the partnership level, and still fail to give notice to him, or to someone entitled to receive that notice on his behalf?
 
 
 28
 Nor are we persuaded by Abelein's argument that we should look behind the inclusion itself and then ask whether the IRS properly determined that the person was a partner. The statutes simply do not make any provision for that approach. Still, Abelein insists that our decision in Scar v. Commissioner, 814 F.2d 1363 (9th Cir.1987) requires us to take it. However, Scar dealt with a situation where the IRS had blatantly erred by issuing a notice referring to a partnership in which the Scars had never had any interest or connection. Id. at 1364-65. On those facts, we decided that we would consider whether the IRS ever did make a determination about the Scars' own tax deficiency. Id. at 1367. That is not contrary to what we decide here. Indeed, Scar is hardly apposite. In the first place, Scar did not purport to say that an individual who was sent an inappropriate notice was not a party to the proceeding which ensued. In the second place, Scar strictly limited itself to a case where the notice and its attachments "make it patently obvious that no determination has in fact been made." Id. at 1367. Were there any doubt about that in the opinion itself, we have since made the limitation perfectly clear. See Clapp v. Comm'r, 875 F.2d 1396, 1400-02 (9th Cir. 1989). Whatever one might say about the IRS's sending of the FPAAs in this case, one cannot say that it is "patently obvious" that the IRS did not make any underlying determination about the partnerships and their membership.[3]
 
 CONCLUSION
 
 29
 We are not entirely oblivious to Abelein's ululation about the IRS's revelation of capital account information to those who might turn out to have been non-partners. That could have the effect of unnecessarily revealing some private tax information. Nevertheless, because the information was disclosed on the FPAAs arising out of a TEFRA partnership level administrative proceeding, its revelation was authorized by 26 U.S.C. § 6103(h)(4), and no action can be maintained against the United States pursuant to 26 U.S.C. § 7431.
 
 
 30
 In so holding, we are not gallied by the possibility that the IRS could, in some conceivable case, misuse the TEFRA proceeding for some improper purpose. Should it do so, the putative partners are not entirely without a remedy. Among other things, upon achieving victory and demonstrating the impropriety of the government's position, the taxpayers could well be entitled to recover costs and attorney's fees. See 26 U.S.C. § 7430. These days, that itself is not an inconsiderable mulct of one's adversaries and can be enough to give budding wrongdoers pause.
 
 
 31
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Abelein also claims that improper information was listed on the FPAAs. We will touch on that question in due course
 
 
 [2]
 "The term `partner' means — (A) a partner in the partnership, and (B) any other person whose income tax liability under subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." 26 U.S.C. § 6231(a)(2)
 
 
 [3]
 Abelein asserts that the FPAAs were improper because they disclosed individual partners' personal basis and at-risk amounts, which are not partnership items at all, and are therefore outside the protection of 26 U.S.C. § 6103(h)(4)(c). We disagree. First, Abelein is a party under § 6103(h)(4)(A). Second, basis and at-risk amounts can have a partnership level componentSee, e.g., Temp. Treas. Reg. § 301.6231(a)(5)-1T(b) and (c). Finally, all that was revealed was, in effect, the capital account information, as shown on the partnership books, such as they were. That same information appears on Schedule K-1.