ALAMEDA CORRIDOR TRANSPORTATION AUTHORITY; City of Los Angeles; City of Long Beach, Plaintiffs—Appellants,

v.

STEWART TITLE GUARANTY COMPANY, a Texas corporation, Defendant—Appellee.

No. 03–55787.
D.C. No. CV–01–04688–PA.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 2004.

Decided Dec. 21, 2004.

Dominic T. Holzhaus, Long Beach City Attorney's Office, Long Beach, CA, Thomas D. Long, Nossaman, Guthner, Knox & Elliott, Los Angeles, CA, Thomas A. Russell, City of Los Angeles, San Pedro, CA, for Plaintiff–Appellant.

Diane B. Sherman, Epstein, Becker & Green, Los Angeles, CA, for Defendant–Appellee.

Steven R. Walker, Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, San Francisco, CA, for Amicus.

Before B. FLETCHER, NOONAN, and PAEZ, Circuit Judges.

## MEMORANDUM*

Plaintiffs Alameda Corridor Transportation Authority ("ACTA") and the Cities of Los Angeles and Long Beach ("the Cities") appeal from a grant of summary judgment denying their claim for title insurance coverage under a policy purchased for $264,500 from defendant Stewart Title Guaranty Company ("Stewart Title"). The district court granted summary judgment on four independent bases, and reserved judgment on a fifth. ACTA and the Cities contend that each of these determinations was in error. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the facts and procedural history, we do not recite them in detail here.

## I.

The court reviews a grant of summary judgment de novo. *Abelein v. United States,* 323 F.3d 1210, 1213 (9th Cir.2003). Summary judgment may be affirmed on any ground supported by the record. *San Jose Christian College v. City of Morgan Hill,* 360 F.3d 1024, 1030 (9th Cir.2004).

## II.

California Code of Civil Procedure § 339(1) provides for a two-year statute of limitations for "an action founded upon a contract, obligation or liability, evidenced by ... a policy of title insurance; provided, that the cause of action ... shall not be deemed to have accrued until *discovery of the loss or damage suffered* by the aggrieved party thereunder." (emphasis added). California courts have held that, generally speaking, "... it is the discovery of facts, not their legal significance, that starts the statute." *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923, 929 (1988). In the insurance context, "an insured need not be aware a loss may be covered by the policy before the statute of limitations will begin to run." *65 Butterfield v. Chicago Title Ins. Co.,* 70 Cal.App.4th 1047, 1054–55, 83 Cal.Rptr.2d 40 (1999) (citing *Love v. Fire Ins. Exchange,* 221 Cal.App.3d 1136, 1143, 271 Cal.Rptr. 246, 249 (1990)).

In 1992, the Cities began negotiating with Southern Pacific Transportation Company to acquire its San Pedro Branch right of way. During those negotiations, the Cities were provided with railroad "valuation maps" ("val maps") prepared by the railroad, together with cover sheets that describe how various parcels were acquired and any encumbrances affecting the property. These maps and cover sheets were used by representatives of the Cities in negotiating the sale price of the right of

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

way. Among the maps and cover sheets was a map entitled "Station Map Vernondale" and a cover sheet entitled "Schedule of Property."

The map shows two broken diagonal lines crossing the right of way at the location of 37th and Alameda Streets. Next to these lines are numbers that match the legal description of the easement on the Final Judgment that created the easement. The Schedule of Property contains a corresponding entry indicating a transfer of an interest in land acquired through condemnation against the "S.P.R.R. Co." (Southern Pacific Railroad Co.) in favor of the City of Los Angeles. The entry indicates that the condemnation was for a "sanitary sewer."

■ We find that undisputed possession of the relevant val map and schedule of property constituted actual notice of the easement. The question of whether constructive notice will trigger commencement of the limitations period under § 339(1) may be a novel and important question of California state law, but it is fortunately one we need not answer. Actual notice of the easement was provided in this instance. Because actual notice was provided, the limitations period had run long before the filing of this lawsuit, and this action is time-barred.

### III.

■ The court affirms the district court on an alternative ground as well. Schedule B, Part I of the policy lists several standard exclusions from liability, including the following:

This policy does not insure against loss or damage, nor against costs, attorneys' fees or expenses, any of all of which arise by reason of the following:

\* \* \* \*

9. Defects, liens, encumbrances, adverse claims, or other matters . . .

(c) resulting in no loss or damage to the insured claimant; . . .

Here, it is undisputed that acquisition of both the land and the insurance policy was by the Cities acting by and through their respective Boards of Harbor Commissioners. Neither the purchase and sale agreement nor the insurance policy name ACTA as a grantee or an insured. The Cities also did not seek to add ACTA as an insured by paying for an additional endorsement.

The Cities have presented no evidence of any damages incurred by them. ACTA was the entity that bore the substantial cost of relocation of the sewer pipeline, but ACTA is not an insured. Plaintiffs argue that ACTA became an insured under the policy "by operation of law" when it contracted with the Cities to take responsibility for management and construction of the project. "Operation of law" can be defined as "[t]he means by which a right or a liability is created for a party regardless of the party's actual intent." Black's Law Dictionary 1124 (8th ed.2004).[1] Here, there is no basis for concluding that ACTA is a successor to any interest in the land by operation of law "regardless of the party's actual intent." Any interest it acquired was through the contract it intentionally entered into with the Cities. Because no insured party suffered loss or damage, plaintiffs' claims are

---

1. At the time this policy was issued, Black's Law Dictionary defined this term as "The manner in which rights, and sometimes liabilities, devolve upon a person by the mere application to the particular transaction of the established rules of law, without the act or cooperation of the party himself." Black's Law Dictionary 1093 (6th ed.1990). This definition is even more unfriendly to ACTA's claim.

excluded under Exclusion 9(c) of the policy.

**AFFIRMED.**